IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEBORAH HUGHES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DALE COUNTY MEDICAL CENTER, )<br>)<br>Defendant. ) | RECEIVED<br>2006 JUL -5 A 10: 33<br>DEBRA P. HACKETT, CLK<br>U.S. DISTRICT COURT<br>MIDDLE DISTRICT ALA<br><br>CIVIL ACTION NO.<br>1:06cv595-SRW |

## COMPLAINT

### JURISDICTION AND VENUE

1. This is a complaint for legal and equitable relief to redress violations by the defendant of the plaintiff's rights secured by the Constitution of the United States and by:

   a) The Americans with Disability Act ("ADA"); 42 U.S.C. 12102;

   b) The Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. 2601;

   c) The Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §621, *et seq.*; and

   d) the laws of the State of Alabama.

2. Federal subject matter jurisdiction exists pursuant to:

   a) 28 U.S.C. § 1331; 1343(a)(3) and 1367.

### PARTIES

3. Plaintiff, Deborah Hughes (hereinafter referred to as "Plaintiff"), is a female over the age of forty and a citizen of Dale County, Alabama. Plaintiff was employed by Defendant when the actions of which she complains took place.

4.     Defendant, Dale County Medical Center (hereinafter referred to as "Defendant"), is an Alabama corporation doing business in Dale County, Alabama. Defendant is an employer as defined by Title VII and employs over 400 employees.

**NATURE OF ACTION**

5.     Plaintiff brings this action of unlawful employment practices and acts of intentional discrimination that occurred at Defendant's company located in the Northern Division of the Middle District of the United States District Court for Alabama.

6.     This is an action to redress grievances resulting from acts of Defendant, its agents, servants, and employees with respect to Plaintiff's employment; and for a permanent injunction restraining Defendant from maintaining a policy and practice of discriminating against the plaintiff and other persons similarly situated on account of age and disability.

7.     Plaintiff seeks compensatory and punitive damages to which she is entitled and attorneys' fees and costs.

**ADMINISTRATIVE PROCEDURES**

8.     On October 17, 2005, within 180 days of learning of the acts of discrimination of which she complains, Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). **(Attached as Exhibit A.)**

9.     Plaintiff received a Notice of "Right to Sue" from EEOC, dated April 3, 2006, with regard to her initial charge of discrimination, entitling her to institute a civil action in federal district court. **(Attached as Exhibit B)**

10.    All prerequisites for bringing this action have been met.

## **STATEMENT OF FACTS**

11. Plaintiff is a white female, over the age of 40.

12. Plaintiff was employed by Dale County Medical Center at its Ariton Clinic from 1974 until she was terminated on April 20, 2005. Plaintiff's career with Defendant spanned over 31 years.

13. Plaintiff's last job title with defendant was office manager, but Plaintiff also acted in the capacity of insurance and billing coder and a manager of other programs, such as the Indigent Patient Program.

14. Plaintiff, at all times, was an employee in good standing and never received verbal or written warnings for any infraction until she required surgery in late 2004 and early 2005.

15. In December 2004, Plaintiff was diagnosed with two benign brain tumors, and was schedule for surgery to remove the tumors on January 3, 2005. Plaintiff immediately informed her supervisor, Dr. John Ennis, of the surgery and anticipated recovery period.

16. Dr. John Ennis stated he did not understand why Plaintiff could not delay her surgery until the "other girls" had elective surgeries for gastric bypass and a hysterectomy. Dr. Ennis stated he was planning to take a trip to Mexico at the time of Plaintiff's surgery and her time off would create a hardship for him. Defendant never offered or explained Family and Medical Leave to the Plaintiff. Plaintiff was made to take her sick and vacation time to cover her surgery.

17. Plaintiff took sick leave for five weeks and came back to work February 7, 2005, working two half-days a week for two weeks. Plaintiff was also unable to drive during this recovery period.

18. Dr. Ennis' wife, Pat Ennis, an agent of the Defendant and Dr. Ennis, was allowed to be in the workplace at all times and act as a supervisor of the staff.

19. Defendant was aware at all times that Pat Ennis was working at the clinic and sent e-mails and telephoned her with specific job requests.

20. Pat Ennis was foul-mouthed, abusive and complained about Plaintiff while she was on part-time status recovering from brain surgery. Plaintiff was continually harassed by Dr. Ennis and Pat Ennis during her time off for surgery.

21. On the day Plaintiff returned to work, Pat Ennis intentionally struck Plaintiff in the head at the point of her incision scar from brain surgery. Plaintiff replied, "Pat, that hurt!" to which Pat Ennis responded, "Oh, I thought it would be better by now." Plaintiff suffered from a severe headache for the remainder of the day as well as the hit caused Plaintiff much emotional harm and mental strain. Plaintiff remained concerned that she would be hit again by Pat Ennis while in the workplace.

22. This incident, as well as other incidents of continued harassment were frequent in the workplace and directed to the Plaintiff. Plaintiff did not welcome the harassment. Plaintiff was frequently told by Dr. Ennis and Pat Ennis that "they" could find someone else to do her job for less pay.

23. When Plaintiff returned to work from surgery, Sheila Dunn, assistant administrator, and Pat Ennis told Plaintiff, "We know why we don't like you: your hair and your baggy pants." Plaintiff had no hair due to her recent surgery and was completely bald at the time she returned to work after surgery.

24. Dr. Ennis further ridiculed Plaintiff's post-surgical appearance in the workplace by commenting on her lack of hair, "When is your hair gonna grow out? It's not even growing.

It's just sticking there." Plaintiff was humiliated and hurt by Dr. Ennis' lack of sensitivity and for singling her out in front of employees.

25. Additionally, upon Plaintiff's return to work, Defendant revised its Extended Illness Benefit policy, making it more difficult to take medical leave.

26. Plaintiff's doctor advised her not to work a full eight hours if she felt stressed. Pat Ennis demanded that Plaintiff send medical excuses from her doctor in Birmingham to Sheila Dunn, Assistant Administrator for Human Resources, who was Ms. Ennis' good friend.

27. Plaintiff developed panic attacks and depression and suffered from insomnia due to the continued harassment by Ms. Ennis and Ms. Dunn.

28. Plaintiff's doctor ordered her to take a week off on April 11, 2005, after suffering from a panic attack on her way to work. Plaintiff's doctor advised that Plaintiff had gone back to work too quickly and increased Plaintiff's medication.

29. Plaintiff returned to work a week later on April 18, 2005.

30. Plaintiff was contacted by Sheila Dunn on April 20, 2006, and informed that her services were no longer needed.

31. Ms. Dunn initially accused Plaintiff of not calling in an absence, however, Plaintiff had notified the office pursuant to the policies and procedures set forth in Defendant's employee handbook.

32. After Plaintiff produced proof she had called in her absence, Ms. Dunn reluctantly admitted that she had received Plaintiff's doctor's excuse, but stated, "I just don't agree with it. For that reason, I'm just going to have to let you go. You've been downsized – It's your word against mine." Plaintiff was the only employee allegedly downsized.

33. After Plaintiff was downsized, her job duties were given to younger workers.

34. Upon Plaintiff's termination, Ms. Dunn informed Plaintiff that she would receive severance, vacation pay and could file for unemployment. However, when Plaintiff filed for her unemployment after being told she was downsized, Defendant responded in writing that Plaintiff had quit her job. Further, Defendant attempted to deny that Plaintiff was the office manager.

35. Plaintiff appealed the Department of Industrial Relations decision and Defendant then responded that Plaintiff's job was downsized. Defendant delayed Plaintiff's unemployment compensation benefits for two and one-half months prior to ceasing their protests to oppose Plaintiff from drawing unemployment benefits. Plaintiff was caused to suffer financial hardship going without benefits or pay during this period of time.

36. Plaintiff also appealed her termination to Vernon Johnson, hospital administrator. However, Mr. Johnson informed Plaintiff that he could not move her into another job. Johnson further commented he knew Plaintiff was suing Defendant. As such, Plaintiff was denied her appeal rights and the transfer or hire into another position with Defendant.

37. Defendant continues to post available jobs and positions that Plaintiff is qualified to work. Plaintiff has applied, but has not been interviewed. Younger employees have been hired or promoted to these positions.

38. As a result of Defendant's discrimination and retaliation, Plaintiff has suffered, and continues to suffer unequal pay and benefits in the form of front and back pay. Further, Plaintiff continues to suffer retaliation, which has caused her mental anguish, loss of career opportunities, emotional and physical injury.

## COUNT ONE

## AGE DISCRIMINATION

39. The plaintiff adopts and realleges 1- 38 as if fully recited here. This is a claim to

redress the unlawful employment practice of age discrimination protected by the Age Discrimination in Employment Act, as amended.

40. Plaintiff is a female over the age of forty (40) years and therefore a member of a protected class.

41. Plaintiff was qualified to perform the job duties of office manager. Plaintiff was terminated and significantly younger individuals were awarded her position and duties. Plaintiff was never provided consistent reasons for her termination. After Plaintiff filed her charge of discrimination, Defendant hired a person that was Plaintiff's age to fill the position.

42. As a proximate result of Defendant's unlawful intentional discrimination, Plaintiff suffered different terms and conditions of employment than younger workers.

43. Plaintiff seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, interest, any liquidated damages, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT TWO

### AMERICANS WITH DISABILITIES ACT

44. Plaintiff realleges paragraphs 1-43, as if fully set out herein.

45. This is a claim to redress the unlawful employment practice of discrimination based on Plaintiff's actual or perceived disability, pursuant to the Americans with Disabilities Act. Said discrimination was conducted by Defendant, its agents and employees and ratified by Defendant.

46. The conduct of the Defendant's agents and employees and ratification of said conduct alleged herein violates the Americans with Disabilities Act because Plaintiff had an actual or perceived disability and was terminated from a position she was already performing for

over 31 years. Plaintiff was terminated from her employment due to her disability and Defendant's perception that Plaintiff was disabled.

47. As a proximate result of the Defendant's unlawful conduct, Plaintiff suffered the following injuries: loss of employment, different terms and conditions of employment, reduction in pay, severe emotional distress, humiliation, embarrassment, mental anguish and financial loss.

48. Plaintiff seeks declaratory and injunctive relief, award of lost employment benefits and wages, reinstatement, back pay, front pay, compensatory damages, punitive damages, costs, attorney fees and any and all such other relief the trier of fact may assess.

## COUNT THREE

## FAMILY AND MEDICAL LEAVE ACT

49. Plaintiff realleges paragraphs 1-48, as if fully set out herein.

50. This is a claim to redress unlawful employment practices in violation of the Family and Medical Leave Act conducted by Defendant, its agents, and employees, and ratified by Defendant.

51. Plaintiff began her first medical leave on January 3, 2005. Plaintiff took sick leave to undergo surgery to remove two benign brain tumors.

52. Plaintiff returned to work on February 7, 2005, after taking five weeks off, and after having this approved by Dr. Ennis.

53. On April 11, 2005, Plaintiff's doctor ordered her to take off work for one week due to panic attacks and because Plaintiff's medication was increased during this time causing certain side effects.

54. Plaintiff returned to work one week later on April 18, 2005.

55. On or about April 20, 2005, Plaintiff was told by Sheila Dunn that she was no

longer needed and accused Plaintiff of not calling in her absence from work.

56. However, Plaintiff had notified the office as required by the Defendant's policy and Ms. Dunn admitted she had received it, but said, "I just don't agree with it. For that reason I'm just going to have to let you go. You've been down-sized – It's your word against mine."

57. At all times, Plaintiff provided all the medical information necessary to her supervisor, Dr. Ennis and returned to work per her doctor's orders.

58. At no time did Defendant offer or explain to Plaintiff that she was entitled to 12 weeks of unpaid leave pursuant to the Family and Medical Leave Act. Rather, Plaintiff, a 31-year employee, was terminated.

59. Plaintiff was subjected to intimidation and harassment when it was necessary for her to take leave. Defendant violated Plaintiff's rights by terminating her employment and not allowing her use of her 12 weeks of unpaid leave pursuant to the Family and Medical Leave Act.

60. Defendant's conduct and actions proximately caused Plaintiff undue hardship and subjected her to disparate treatment. The discrimination included Plaintiff being terminated and having terms affecting her future employment placed on her while on leave.

61. As a proximate result of Defendant's unlawful and unconstitutional conduct, Plaintiff suffered the following injuries: different terms and conditions of employment, severe emotional distress, mental anguish, trauma and embarrassment, loss of her employment, financial loss, inconvenience and damage to her professional reputation and standing.

62. Plaintiff seeks declaratory and injunctive relief, reinstatement, award of lost employment benefits and wages, back pay, front pay, compensatory damages, liquidated damages, costs, attorney fees, and any and all such other relief the trier of fact may assess.

## COUNT FOUR

## RETALIATION

63. Plaintiff realleges paragraphs 1-62, as if fully set out herein.

64. This is a claim against Defendant for the illegal and intentional acts of retaliation toward Plaintiff pursuant to the ADEA, ADA, and FMLA.

65. Plaintiff was downsized in retaliation for pursuing her rights under the ADEA, ADA, and FMLA. Plaintiff's work environment and conditions were materially altered and changed. Several jobs have since become available with Defendant. Plaintiff has applied and is qualified. Plaintiff has been denied an interview for the positions and younger non-disabled employees have been hired or promoted. Plaintiff complained both internally and to the EEOC.

66. Such unlawful employment practices proximately caused Plaintiff to suffer severe emotional distress, mental anguish, embarrassment, humiliation, shame, trauma and financial loss for which she claims damages.

67. Plaintiff seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, interest, compensatory and punitive damages for loss of career opportunity, humiliation, embarrassment, and mental anguish; costs, attorneys' fees and any and all such other relief the trier of fact may assess.

## COUNT FIVE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

68. Plaintiff adopts and realleges 1-67 as if fully recited herein. This is a claim against Defendants arising under the laws of the State of Alabama prohibiting the intentional infliction of emotional distress.

69. The conduct of the Defendant's employees, as aforesaid, was extreme, outrageous

and beyond the boundaries of decency.

70. Such conduct created a hostile work environment that was unwelcomed by Plaintiff, altered Plaintiff's working conditions and should not go unpunished.

71. The intentional acts of harassment and intentional conspiracy toward Plaintiff by the Defendant's employees, and the subsequent ratification by the Defendant, altered Plaintiff's work environment.

72. Defendant's failure to implement its policy on discrimination in the work place and managers'/supervisors' conduct and standards proximately caused Plaintiff to suffer severe emotional distress, mental anguish, embarrassment, humiliation and trauma for which she claims damages.

73. Plaintiff seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, interest, compensatory damages for loss of career opportunity, humiliation and embarrassment, mental anguish, costs, attorneys' fees, punitive damages and any and all such other relief the trier of fact may assess.

## COUNT SIX

### NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

74. Plaintiff adopts and realleges paragraphs 1-73 as if fully stated herein. This is a claim arising under the laws of the State of Alabama to redress the negligent hiring, training, supervision and retention of Defendant's employees.

75. Defendant had a duty to provide the Plaintiff with a reasonably safe and non-hostile work environment.

76. Defendant had actual notice of the actions complained of by Plaintiff by Dr. John Ennis, Pat Ennis, Sheila Dunn and Vernon Johnson.

77. Defendant having such knowledge, negligently failed to discipline or terminate those employees, who actively harassed and conspired against Plaintiff, on an ongoing basis, and failed to protect Plaintiff from further harassment.

78. Defendant failed to administer their own policies against harassment and discrimination and failed to regularly and clearly communicate such policy to its agents and employees.

79. Such unlawful employment practices proximately caused Plaintiff to suffer different terms and conditions of employment, severe emotional distress, mental anguish, trauma and embarrassment, financial loss and loss of her employment.

80. Plaintiff seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, interest, compensatory and punitive damages for loss of career opportunity, humiliation and embarrassment, mental anguish; and costs, attorneys' fees and any and all such other relief the trier of fact may assess.

## COUNT SEVEN

## ASSAULT

81. Plaintiff adopts and realleges 1-80 as if fully recited herein. This is a claim against Pat Ennis arising under the laws of the State of Alabama prohibiting assault.

82. Pat Ennis, as agent of Defendant, did commit assault upon the plaintiff by showing her intent to place harm upon plaintiff by hitting the Plaintiff on her head after brain surgery, harassing the plaintiff and causing the plaintiff to fear Pat Ennis.

83. Plaintiff was caused to suffer great physical pain, embarrassment, humiliation, shame, emotional distress, trauma and mental anguish for which she claims damages.

84. The Plaintiff seeks declaratory and injunctive relief, award of lost employment,

benefits and wages, back pay, front pay, interest, compensatory and punitive damages for loss of career opportunity, humiliation and embarrassment, mental anguish, costs, attorneys' fees, punitive damages and any and all such other relief the trier of fact may assess.

## COUNT EIGHT

### BATTERY

85.    Arnold adopts and realleges 1-84 as if fully recited herein. This is a claim against Pat Ennis arising under the laws of the State of Alabama prohibiting battery.

86.    Pat Ennis did commit battery of the plaintiff by hitting the Plaintiff on her head after brain surgery and further by touching the plaintiff in a rude and hostile manner that was unwelcomed and uninvited by the Plaintiff.

87.    Plaintiff was caused to suffer physical pain, severe emotional distress, mental anguish, embarrassment, humiliation and trauma for which she claims damages.

88.    The Plaintiff seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, interest, compensatory damages for loss of career opportunity, humiliation and embarrassment, mental anguish, costs, attorneys' fees, punitive damages and any and all such other relief the trier of fact  may assess.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests this Court:

A)    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging further in its discriminatory treatment on the basis of age, disability and FMLA.

B)    Order Defendant to institute and carry out policies, practices and programs which provide equal provisions and employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices, including implementing a

policy against age and gender discrimination in the work place and against retaliation for engaging in protected activities;

  C) Order Defendant to make Plaintiff whole by providing appropriate front pay with prejudgment interest, back pay with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, compensatory damages, punitive and liquidated damages.

  D) Award Plaintiff compensatory, punitive and liquidated damages;

  E) Award Plaintiff her costs and expenses herein, including a reasonable attorney fees; and,

  F) Award such other and further relief which this Court deems necessary and proper.

Respectfully submitted,

_____
Alicia K. Haynes
Alabama State Bar No.: 8327-E23A
Attorney for Plaintiff

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama   35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
ASB-8327-E23A

       **PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

_____
Alicia K. Haynes
Alabama State Bar No.: 8327-E23A

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL:**

**DEFENDANT'S ADDRESS:**
Dale County Medical Center
126 Hospital Avenue
Ozark, AL 36360

**PLAINTIFF'S ADDRESS:**
Ms. Deborah Hughes
c/o Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, Alabama 35226