**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **DEBORAH HUGHES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NUMBER:** |
| v. ) | **1:06-cv-595-SRW** |
| ) | |
| **DALE COUNTY MEDICAL CENTER,** ) | |
| ) | |
| **Defendant.** ) | |

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF SUMMARY JUDGMENT

COMES NOW, Dale Medical Center, Defendant in the above-styled action, and submits this reply in support of summary judgment. In further support of summary judgment, Defendant shows as follows:

### Plaintiff's "Facts" Are Not Supported By the Evidentiary Record

Plaintiff's Statement of Facts overreaches the evidentiary record on many points, from the most basic facts about her employment to critical allegations about her job duties and performance. Here are a few examples:

- Throughout her brief (at pages 17, 18, 37, 42, 44, 45, 48, and 57), Plaintiff repeatedly alleges that she was employed by Dale Medical Center for 31 years. She was not. As Plaintiff herself testified, she was first employed by Dale Medical Center on August 6, 1998 – which means she was employed by Dale Medical Center for less than <u>seven</u> years. Plaintiff at 103:12-104:05.

- Plaintiff (at page 6) claims that she was rated on her most recent evaluation as "meets expectations" in all but one category. In fact, she received "needs improvement" in multiple areas. One was for "maintains necessary information

    for financial reports and in regards to patient's bills, maintains accurate balances for each patient account." Another was for "collects, maintains, and provides statistical data as directed." Another was for "organizes, evaluates and monitors business office operations." Another was for "Assures that all office staff follows established policies and procedures." Plaintiff's depo. at DX-5.

- Plaintiff (at pages 7-8) then tries to deflect from her performance issues by suggesting that she fixed the billing problem on her own initiative. The issue, however, was not the administrative problem in processing the bills, but the fact that Plaintiff wrote off the bills without authorization <u>before</u> she was reprimanded and <u>before</u> she attempted to fix the problem. Although the administrative glitch may not have been her fault, she alone was at fault for writing off the bills without authorization – the issue for which she was counseled. Plaintiff at 31:21-34:01.

- Plaintiff (at page 24 and again on page 41) claims that Dunn testified that Plaintiff's duties were given to Lisa Brooks. Dunn's actual testimony is the very opposite:

        Q.    After Ms. Hughes was terminated who did that job?

        A.    Put the patient demographics in?

        Q.    Yes, ma'am.

        A.    United ProBill

* * *

        Q.    The duties that Ms. Hughes had performed that were not related to those being taken by United ProBilling, who assumed those?

        A.    All of the supervisory duties that are in here, Dr. Ennis assumed them.

* * *

> Q. Did Ms. Brooks assume the bulk of Ms. Hughes' responsibilities?
>
> A. She has no supervisory duties, no supervisory – the financial reports had to come from ProBill. Dr. Ennis did his own coding. Then ProBill would do – check behind him. The back office person would have worked up. Sheryl would have drawn blood. I think they probably divided the duties. We had housekeeping from the main hospital to go up and do the cleaning duties.

Dunn at 148:05-150:06.

**Plaintiff's Does Not Allege Anything About Age in Her Charge.**

Plaintiff filed a three page, 16 paragraph detailed Charge of Discrimination with the EEOC. It includes very specific allegations about how she claims she was mistreated because of her medical condition. Nowhere in her Charge does she allege that anything adverse happened to her because of her age or that anyone else was treated better because they were younger. Accordingly, in her brief, Plaintiff does not claim to have made any allegations regarding age discrimination in her Charge. Instead, she relies (at pages 36-37) on a line of retaliation cases which have held that a plaintiff who files a charge of discrimination alleging discrimination under Title VII does not have to file a retaliation charge under Title VII because the retaliation flows from the original claim.

In *Gregory v. Georgia Dept. of Human Resources,* 355 F.3d 1277, 1280 (11th Cir. 2004), the primary case upon which Plaintiff relies, the Eleventh Circuit noted the unique relationship between retaliation claims and the underlying discrimination claims, noting that retaliation claims were "were **inextricably intertwined** with her complaints of race and sex discrimination." (emphasis added). One of the earlier cases in this

3

same line, *Gupta v. East Texas State Univ.*, 654 F.2d 411 (5th Cir. Unit A Aug. 1981), was also expressly based upon the unique relationship: "There are strong practical reasons and policy justifications for this conclusion. It is the nature of retaliation claims that they arise after the filing of the EEOC charge."[1]

Here, Plaintiff tries to extend this rationale to apply to different forms of discrimination which are covered by different statutes. That is, that her age discrimination claims somehow flows from her disability discrimination claim. It does not. They are very different claims which arise under distinct statutes.

### Plaintiff Has Not Established a "Regarded As" Claim

In her brief (at page 49), Plaintiff does not argue that she had an actual disability, but only pursues a "regarded as" claim. In doing so, Plaintiff ignores that she was the sole source of information about her medical condition and she informed Sheila Dunn and Dr. Ennis that her tumor was benign and expected full recovery after surgery. Hughes 52:22 – 55:6;  113:11 – 113:14; Dunn Aff. ¶ 15.

To pursue a "regarded as" claim, Plaintiff must establish that DMC regarded her as "substantially limited" in a major life activity, i.e. an activity central to most people's daily lives. *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 199-200 (2002); *Hilburn v. Murata Electronics N.A., Inc.,* 181 F.3d 1220, 1230 (11th Cir. 1999). Mere evidence of an impairment is not sufficient to establish disability under the ADA. *See, e.g., Toyota, 534 U.S. at 198* ("It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an

---

[1] Unlike some of other early cases in this line, this is not a case in which the plaintiff later filed an amended charge to correctly state the form of discrimination alleged. Plaintiff here only filed one Charge and it does not include any allegations of age

4

impairment. Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'") (quoting *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 567 (1999)).

Here, Plaintiff offers no evidence to suggest that DMC regarded Plaintiff as having an impairment that substantially limited any major life activity. The only major life activity Plaintiff identifies is working. As she notes (at page 50), she must show that she is substantially limited in performing "a class of jobs or a broad range of jobs in various classes." She offers no evidence that DMC regarded her as substantially limited in performing any job, much less an entire class of jobs. She was released to return to work without any restrictions, and significantly, she does not claim that anyone thought the effects of her benign tumor created any permanent limitations. Hughes 109:15 – 110:12 and DX 8 thereto; *see* Dunn 141:22-142:9; Johnson 147:13 – 149:1. *See Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1290 (10th Cir. 2000) (regarded as claim failed without evidence the employer considered condition to be permanent or long-term).

**Plaintiff received paid leave for the entire time her doctor approved.**

Plaintiff's brief tries to make much out of the fact that she was not specifically told that her medical leave was covered by the FMLA. Both the U.S. Supreme Court and the Eleventh Circuit have specifically rejected the argument that the form (designating leave as FMLA) is more important than the substance (providing the leave) and held that what the statute requires is the leave regardless of the designation. *Ragsdale v.*

---

discrimination.

*Wolverine Worldwide, Inc.,* 535 U.S. 81, 93-95 (2002); *McGregor v. Autozone, Inc.,* 180 F.3d 1305, (11th Cir. 1999).

DMC publishes its FMLA policy in its employee handbook and covers the policy in orientation as well as in annual refresher courses. DX 4 at p. D00193 – D00194; Dunn 20:1-20:17, 84:4 – 84:14. Whether or not she was specifically told that her paid medical leave was FMLA leave, Plaintiff admits that she received paid leave for all of the time off approved by her doctor. Hughes 108:22 – 109:11, 110:1 – 110:6 and DX 7 thereto; Dunn 78:18 – 80:22 and PX 11 thereto at p. D00015 – D00016 (originally returned to work half days only when released to do so by her doctor); Hughes 109:15 – 110:12 and DX 8 thereto; Dunn 78:18 – 80:22 and PX 11 thereto at p. D00015 – D00016 (then returned to work full time only when released by her doctor); Hughes 75:5 – 76:15; Dunn 102:5 – 102:22 and PX 11 thereto at p. D00019 – D00020 (granted additional leave because of her panic attack); Hughes 75:2 – 75:4 (all of her leave was paid).

Plaintiff does not claim that anyone from DMC told her that she could not take additional leave or otherwise discouraged her from taking all the leave she needed. Hughes 74:5– 74:21, 121:23– 123:3. Her only claim is that Pat Ennis, who was not an employee of DMC and who had no authority over her, told her that she was needed back at the clinic.[2] Hughes as 74:01-05. Plaintiff never told anyone that she wanted to take any additional time off. Hughes at 74:18-21.

---

[2] Plaintiff's claim in this regard is at odds with her claim that she was terminated for taking FMLA leave: Pat Ennis encouraged her to return to work because she was needed in the clinic and she was then fired when she returned.

6

**Plaintiff Has Not Shown Pretext.**

Throughout her brief, Plaintiff attempts to manufacture a conflict in DMC's rationale by conflating two different issues – why she was terminated and why she was not eligible for rehire. DMC has consistently explained that Plaintiff was terminated because it outsourced the clinic's billing (which was her primary function) and Dr. Ennis reported that she did not want to collect old accounts. Dunn 113:16 – 114:4; Dunn Aff. ¶ 18; Johnson 60:11 – 61:4.. At the time she was terminated, DMC determined that she would not be eligible for rehire because of the performance problems for which she had been counseled the previous year. Dunn Aff. ¶ 21; Dunn 158:17 – 160:13 and PX 18 thereto. The two are entirely consistent reasons for two distinct decisions.

The decision to outsource the billing for the Ariton clinic was made in August or September 2004 <u>before</u> Plaintiff was diagnosed with the tumor and <u>before</u> she requested leave. Dunn 13:6-14:22, 142:16-143:15; Dunn Aff. ¶ 13; Johnson 87:13 – 88:3. At the time, Plaintiff's primary function was handling the billing. Hughes 15:9 – 15:16; Dunn 26:6 – 26:8; 61:19 – 62:13; Dunn Aff. ¶ 8. After the billing was outsourced, Probill performed the functions Plaintiff previously performed, with the exception of some coding performed by Dr. Ennis. Hughes 79:23 – 80:12, 81:6 – 81:8, 111:23 – 112:4. Pat Ennis never performed any of these functions. Dunn at 148:05-150:06.

At the time of her termination, DMC determined that Plaintiff would not be eligible for rehire – <u>before</u> she ever filed her Charge of Discrimination. Dunn Aff. ¶ 21; Dunn 158:17 – 160:13 and PX 18 thereto. Plaintiff therefore cannot base her retaliation claims on a decision made before she engaged in any protected conduct.

7

Further, Plaintiff suggests throughout her brief that DMC manufactured its rationale that there was no longer a need for Plaintiff's position. However, the evidence is uncontradicted that the majority of her duties were outsourced, the remainder of her duties were absorbed by existing employees, and no office manager or office coordinator was ever hired to replace her. Dunn Aff. ¶¶ 18, 23; Dunn at 148:05-150:06. Pat Ennis certainly was not hired as a replacement – she came in only occasionally to assist with minor duties such as filing. Dunn 21:12 – 22:11, 25:19 – 26:5, 42:9 – 43:11, 148:16 – 150:12. Although Plaintiff protests that other offices still needed office coordinators after outsourcing the billing function, she cites no evidence to prove that the business needs of the Ariton clinic were similar to those of other clinics. She also suggests that the outside contractor's work should not have eliminated the need for Plaintiff's position, because Plaintiff was still needed early in her employment when the billing was temporarily shifted to outside contractor MedNet. However, she ignores that United ProBilling's scope of work was greater and that it took over additional duties that MedNet had not performed. Dunn Aff. ¶¶ 8, 13, 18; Dunn 54:13 – 55:1, 147:18 – 148:10.

**<u>Plaintiff's Newly Added Harassment Claim</u>**

At pages 58-60 , Plaintiff argues in support of a age-based hostile environment claim. None of the Counts of Plaintiff's Complaint, including Count I, include any allegations of a hostile environment. Count I, the only age claim, focuses exclusively on her termination. Moreover, none of the allegations (set out on page 59) have anything to do with her age and, even if they somehow were age-related, they are not sufficiently severe or pervasive to rise to the level of a hostile environment.

8

**Plaintiff's State Law Claims**

Plaintiff (at page 65) concedes her intentional infliction of emotional distress claim. And she does not argue that her assault and battery claim was asserted against DMC as it was explicitly asserted against the individual defendant only: "This is a claim against Pat Ennis under the laws of the State of Alabama prohibiting assault." Complaint at ¶ 81. Finally, Plaintiff does not point to a single common law tort necessary to support her negligent supervision claim. *See Stevenson v. Precision Standard, Inc.,* 762 So. 2d 820, 824 (Ala.1999); *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002) ("As Alabama does not recognize a common-law tort for sex discrimination in employment, the Court finds that Plaintiff cannot maintain an action for negligent supervision, training, and/or retention based upon conduct that is employment discrimination, but does not support a common-law tort.")

**Conclusion**

Accordingly, Defendant is entitled to summary judgment.

                                              Respectfully Submitted,

                                              s/Albert L. Vreeland, II
                                              Albert L. Vreeland, II ASB-0066-V78A

LEHR MIDDLEBROOKS & VREELAND, P.C.
P.O. Box 11945
Birmingham, Alabama 35202-1945
(205) 326-3002

## CERTIFICATE OF SERVICE

      I hereby certify that on July 23, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

      Alicia K. Haynes, Esq.
      Haynes & Haynes, P.C.
      1600 Woodmere Drive
      Birmingham, AL 35226

      Respectfully submitted,

      s/Albert L. Vreeland, II
      Albert L. Vreeland, II ASB-0066-V78A
      Lehr Middlebrooks & Vreeland, P.C.
      P.O. Box 11945
      Birmingham, AL 35202-1945
      Phone: (205) 326-3002
      Fax: (205) 326-3008
      E-mail: avreeland@lehrmiddlebrooks.com
      Bar No.: ASB-0066-V78A

181247.doc