IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEBORAH HUGHES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NUMBER: |
| v. ) | 1:06-cv-595-SRW |
| ) | |
| DALE COUNTY MEDICAL CENTER, ) | |
| ) | |
| Defendant. ) | |

## AFFIDAVIT OF SHEILA DUNN

STATE OF ALABAMA    )
COUNTY OF DALE      )

1. My name is Sheila Dunn. I am a resident of the State of Alabama, over twenty-one (21) years of age, and give this Affidavit of my own free will. I have personal knowledge of the information contained in this Affidavit.

2. I am the Assistant Administrator of Human Resources for Dale Medical Center. I have held that position for approximately eight years. I have been employed by Dale Medical Center since 1984. I am over 40 years of age. My date of birth is February 11, 1947.

3. I am familiar with the circumstances surrounding the employment, job duties, and termination of Deborah Hughes.

4. Ms. Hughes was employed at a rural healthcare clinic which Dale Medical Center purchased in 1998, known as the Ariton clinic.

5. In or prior to early 2004, Dr. John Ennis became the resident physician at the Ariton clinic and became Ms. Hughes' direct supervisor. At that time, Dr. Ennis was over 40 years of age. Dr. Ennis' date of birth was December 25, 1948.

6. In early 2004, Dr. Ennis took a period of leave to undergo treatment for terminal pancreatic cancer.

7. I was aware that Dr. Ennis' wife, Pat Ennis, sometimes visited him in the clinic due to his illness, but I was not aware of the frequency or length of her visits. Mrs. Ennis was not employed by Dale Medical Center at any time during the period of Ms. Hughes' employment.

8. When Dale Medical Center took over the Ariton clinic, Ms. Hughes' principal responsibility was to run the billing and coding system. That responsibility involved entering data and medical charges into the computer and sending bills for those charges to patients and their insurance companies. Early in Ms. Hughes' employment for Dale Medical Center it temporarily shifted some of the billing function to a third party contractor known as MedNet. During that period of time Ms. Hughes continued to perform the data entry and coding functions, as well as some billing on Dr. Zumstein's system. Subsequently, Dale Center stopped using the MedNet system for the Ariton clinic and Ms. Hughes resumed performing the data entry, billing and coding functions.

9. At the time that Plaintiff performed the billing and coding functions for the Ariton clinic, that clinic was the only rural general healthcare clinic operated by Dale Medical Center that performed its own billing and coding function. Although one other doctor's office, the office of Dr. Robin Cromer-Tyler, performed its own billing and coding functions; that office was not a general healthcare clinic but was a surgery specialty clinic which therefore had a simpler billing and coding system. The billing

functions for all of Dale Medical Center's other rural general healthcare clinics were always performed by an outside contractor. Id.

10. In or about July 2004, Dr. Ennis discussed with me that Ms. Hughes' job performance needed to improve in several areas – including billing -- as indicated on the job evaluation attached as Plaintiff's Exhibit 10 to my deposition in this lawsuit. Plaintiff's Exhibit 10 to my deposition is a true and accurate copy of Ms. Hughes' July 2004 job evaluation by Dr. Ennis, which was created in the ordinary course of business and has been kept and maintained as a business record of Dale Medical Center.

11. In or about June 2004, I learned that Ms. Hughes had written off some patient accounts without authorization.

12. In or about August 2004, Ms. Hughes ordered 10 times more flu vaccine for the clinic than she was instructed to order. The vaccine cost $25,000 and was non-returnable. Dale Medical Center considered this error to be very serious, and potentially financially crippling for a small rural clinic, and both Dr. Ennis and I reprimanded her for that error.

13. Because of the problems with Ms. Hughes' job performance and because of Dale Medical Center's desire to bring the billing system at the Ariton clinic into conformity with the third-party systems used at its other rural healthcare clinics, Dale Medical Center decided in August or early September 2004 to outsource the billing, coding and data entry functions for the Ariton clinic to an outside contractor. The same month, Dale Medical Center began searching for an outside contractor to perform this function and began negotiating with outside contractors, with the goal of implementing a new system by October 1, 2004, which was the beginning of Dale Medical Center's new

fiscal year.  Dale Medical Center was not able to complete negotiations by October 1, 2004, but did complete the negotiations sometime in early 2005 with United ProBill.

14.    In or about December 2004, I learned that Ms. Hughes had been diagnosed with a benign brain tumor for which she needed surgery.  I did not know that Ms. Hughes claimed to have any medical problem prior to this time.

15.    At the time that I learned of her diagnosis, I understood and expected that Ms. Hughes would return to work after her recovery from the surgery.  While Ms. Hughes was out on leave for the surgery and recovery period, I considered her to be on leave pursuant to the Family and Medical Leave Act, but I did not require her to complete paperwork because I had no doubt that she was qualified for leave pursuant to the Act.  Ms. Hughes was given all the leave that she requested.

16.    Upon her return to work following the surgery, I understood that she had fully recovered and was able to perform her job.

17.    After Ms. Hughes returned from surgery, Dr. Ennis and Ariton clinic employee Lisa Brookes both informed me separately that Dr. Ennis had asked Ms. Hughes to work on collecting overdue patient accounts.  Dr. Ennis and Lisa Brookes further informed me, prior to the decision to terminate Ms. Hughes' employment, that Ms. Hughes stated she could not collect the old accounts because those people were her friends.

18.    Because the billing, coding, and data entry functions – the bulk of Ms. Hughes' job – were taken over by United ProBill in April 2005, and because Dr. Ennis and I understood that Ms. Hughes did not intend to collect the overdue patient accounts, Dr. Ennis recommended the elimination of Ms. Hughes' position based on the fact that

there was no longer a need for her position, on or about April 20, 2005. I approved this recommendation for the same reasons, based both on the information I learned from Dr. Ennis and on the information I learned independently from Lisa Brookes. Vernon Johnson subsequently approved the decision as well.

19. Neither Ms. Hughes' age, medical condition, nor medical leave were a factor in the decision to terminate Ms. Hughes' employment.

20. On April 20, 2005, I met with Ms. Hughes and informed her that her position had been eliminated.

21. I determined at that time that Ms. Hughes was ineligible for re-hire, because of the performance problems that she had in the year prior to her termination.

22. There were no open positions for which Ms. Hughes was qualified at that time.

23. No one was ever hired to fill the office manager position nor any similar position at the Ariton clinic.

24. Although Ms. Hughes subsequently applied for re-hire, she was not considered for these jobs because I had determined her to be ineligible.

25. I was never aware of any allegation of inappropriate conduct by Dr. Ennis nor Mrs. Ennis prior to the end of Ms. Hughes' employment.

26. Dale Medical Center received a notice from the Equal Employment Opportunity Commission indicating that it dismissed Ms. Hughes' Charge of Discrimination on April 3, 2006. A true and correct copy of this notice is attached hereto as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct. Executed this the 16th day of April, 2008.

_Sheila Dunn_

178580